**UNITED STATES of America, Appellee,**

v.

**Delecia HINTON, Appellant.**

**No. 89–5454.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1990.

Decided July 13, 1990.

---

**356**

Barry V. Voss, Minneapolis, Minn., for appellant.

James E. Lackner, Minneapolis, Minn., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

BEAM, Circuit Judge.

Delecia Hinton was convicted of one count of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988), and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1988). During the course of her jury trial, Hinton moved for judgment of acquittal based on her allegation that she was entrapped as a matter of law. The district court[1] denied Hinton's motion. We affirm.

## I. BACKGROUND

In April of 1988, Hinton met Robert Grover, Jr. On three occasions during the next nine months, Hinton located cocaine sources who had transactions with Grover involving one-half to one ounce of cocaine. *See* Trial Transcript vol. II, at 146, 149, 156, 158. Hinton testified that she stopped distributing drugs in January of 1989, because her children were more important to her than the drugs and she believed that her family would suffer from her continued involvement. *See id.* at 148–50, 156.

On March 4, 1989, Chris Omodt, a police officer from Edina, Minnesota, arrested Grover. Grover was charged with possession with intent to distribute two ounces of cocaine. *See id.* at 107–09, 117–18. A few days after the arrest, Omodt visited the Hennepin County Jail to suggest to Grover that he cooperate in obtaining information for a narcotics investigation. *Id.* at 123–24. Omodt indicated that Grover's cooperation would be brought to the court's attention at the time of Grover's sentencing. *Id.* at 120. Grover agreed to ferret out sources of cocaine so that possible transactions and subsequent arrests could be made. *Id.* at 124.

On April 3, 1989, Grover telephoned Hinton, conversed in small talk, and informed Hinton of his arrest. *Id.* at 143–44. The next evening, Grover again telephoned Hinton. He asked if Hinton was "doing anything" and she replied that she "didn't do that kind of stuff anymore," meaning that she did not sell drugs anymore. *Id.* The following evening, Grover again telephoned Hinton, and after engaging her in idle chatter, he hung up when she told him that she no longer involved herself in drugs. *Id.* at 145. Hinton did not take any calls for a few days and did not speak with Grover until April 8, 1989, two days before her arrest. At that time, Grover asked if Hinton knew of a source from whom he could get drugs. She told him no, and then left her residence to visit her sister. *Id.* at 146, 195–96. Before departing, Hinton gave her cordless telephone to a neighbor, Leona Davis. Davis testified that on April 9, she received eight to ten unusual and urgent calls from Bob [Grover] asking for Hinton. *Id.* at 196–97. After retrieving her cordless telephone from Davis, Hinton again spoke to Grover because he telephoned her at 7:00 a.m. on April 10, 1989. Grover indicated that he had friends visiting from out of town, and asked if Hinton could get him some drugs. She replied in the negative. Grover telephoned again at noon, and continued to call every fifteen minutes from 3:00 p.m. until Hinton agreed to locate a cocaine source. *Id.* at 145–47. Deputy Jeffrey Burchett also was involved in Grover's attempts to procure one pound of cocaine. Grover called Hinton from the

---

**1.** The Honorable Harry H. MacLaughlin, Judge of the United States District Court for the District of Minnesota.

Hennepin County Sheriff's office, and Deputy Burchett himself posed as Grover's friend who needed the cocaine. *Id.* vol. I, at 31, 57.

Pursuant to her agreement to locate cocaine, Hinton called several possible sources and eventually spoke with Desmond Campbell, who indicated that he had cocaine. *Id.* vol. II, at 147–48, 177–80, 204. The parties agreed that Grover and his friends, including Deputy Burchett, would purchase eight ounces of cocaine for $8,800. The parties decided to meet at an Ember's Restaurant parking lot, at 77th and Highway 100 in Edina, Minnesota. *Id.* vol. I, at 33, 35.

Before departing for the restaurant parking lot, Hinton called her sister because she was fearful about the drug transaction. Hinton left her children at home, and informed her sister that if she did not return in an hour or two, something happened during the transaction. *Id.* vol. II, at 150. Hinton testified that she participated in the transaction even though she was fearful, because she had been pushed into it by Grover and she believed that there was no way for her to escape. *Id.* at 152.

At approximately 9:30 p.m. on April 10, 1989, Hinton and her cocaine source, Campbell, arrived at the restaurant parking lot. Deputy Burchett obtained the eight ounces of cocaine and exchanged it for the money. Officers of the Hennepin County Sheriff's Department and Edina Police Department arrested Hinton, Campbell, and the driver of the automobile containing the cocaine, Mary Blaisdell. *Id.* vol. I, at 37–41.

On May 2, 1989, a grand jury returned a two-count indictment against Hinton, Campbell, and Blaisdell, charging them each with one count of aiding and abetting in the distribution of cocaine, and one count of conspiracy to distribute cocaine. Campbell and Blaisdell pleaded guilty before Hinton went to trial. Hinton's jury trial commenced on June 22, 1989, and concluded on June 26, 1989. During trial, Hinton moved for judgment of acquittal, which the district court denied. The jury returned a guilty verdict on both counts. The district court sentenced Hinton to thirty-seven months imprisonment on Count I and thirty-seven months on Count II, the sentences to run concurrently. The court imposed a three-year supervised release term for Count I and a three-year supervised release term for Count II, the terms to run concurrently. Also, the court ordered Hinton to pay a special assessment of $100. On appeal, Hinton raises one issue: whether the evidence at trial established that she was entrapped as a matter of law.

## II. DISCUSSION

 Entrapment is an affirmative defense, and the question of entrapment is generally for the jury. *United States v. Williams,* 873 F.2d 1102, 1104 (8th Cir. 1989). As indicated, the jury found Hinton guilty both of aiding and abetting, and of conspiracy in the distribution of cocaine. The district court denied Hinton's motion for judgment of acquittal. Thus, in order to prevail on appeal from the district court's denial of her motion, Hinton must establish the following two elements as a matter of law: (1) that the government induced her to engage in the crime; and (2) that she lacked the necessary predisposition to perform the criminal conduct. *See Mathews v. United States,* 485 U.S. 58, 62–63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). Under the first element, entrapment is established as a matter of law if the record clearly demonstrates that a government agent "originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the criminal act at the urging of the government agent." *United States v. Shaw,* 570 F.2d 770, 772 (8th Cir.1978). Under the second element, predisposition "focuses upon whether the defendant was an 'unwary innocent' or instead, an 'unwary criminal' who readily availed [herself] himself of the opportunity to perpetrate the crime." *Mathews,* 485 U.S. at 63, 108 S.Ct. at 886. Also, when reviewing a district court's denial of motion for acquittal on the entrapment defense, this court must view the evidence in a light most favorable to the government. *See United States v. Underhill,* 753 F.2d 645, 647 (8th Cir.1985).

■ The purpose behind the entrapment defense is to prevent law enforcement officers from manufacturing crime. *See United ed States v. Foster,* 815 F.2d 1200, 1202 (8th Cir.1987). The defense, however, should not preclude officers from using stealth or strategy to trap an unwary criminal, or from providing a criminal with the opportunity to commit a crime. *See Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). Thus, the question arises as to whether the government crossed over the line between the use of legitimate methods to obtain criminal evidence, and the instigation of illegal conduct by those not otherwise disposed to engage in criminal activity. If it did, entrapment occurred as a matter of law. *United States v. Pfeffer,* 901 F.2d 654, 656 (8th Cir.1990).

We find that Hinton has not established entrapment as a matter of law. Even though Grover telephoned Hinton ad nauseam, Hinton was not an unwary innocent victim. *See Mathews,* 485 U.S. at 63, 108 S.Ct. at 886–87. Within four months of the transaction at issue in this case, Hinton had located cocaine sources for Grover. Hinton drew on her experiences as a cocaine distributor, was able to telephone several possible sources, and eventually reached an agreement with Campbell. Campbell testified that he charged Hinton $1,000 per ounce of cocaine. *See* Trial Transcript, vol. II at 206. Hinton, however, sold the eight ounces of cocaine to Deputy Burchett for $8,800, or $1,100 per ounce. Hinton, therefore, would have realized an $800 profit if she had not been arrested. Accordingly, we find that the government did not induce an innocent Hinton to engage in this crime. Rather, Hinton had the necessary predisposition and she availed herself of the opportunity to perpetuate the crime.

### III. CONCLUSION

For the reasons stated herein, we affirm the district court's denial of Hinton's motion for judgment of acquittal.