UNITED STATES of America, Appellee,

v.

Dewey G. CRUMP, Appellant.

No. 90–3018.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1991.

Decided May 30, 1991.

Rehearing Denied July 11, 1991.

&#9758;**36.5**

Jane C. Hogan, St. Louis, Mo., for appellant.

James K. Seitz, St. Louis, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and DOTY,[*] District Judge.

DOTY, District Judge.

Dewey G. Crump appeals his conviction following a jury trial of one count of distributing phentermine HCL and two counts of distributing cocaine. Crump contends that the district court[1] erred in not holding that he was entrapped as a matter of law, in limiting the cross-examination of a government witness, and in admitting the testimony of another government witness regarding Crump's prior bad acts. For the reasons discussed below, we affirm Crump's conviction.

On February 15, 1990, Robert Feigenbaum ("Feigenbaum") was arrested while purchasing cocaine from an undercover detective from the St. Louis Metropolitan Police Department. Feigenbaum is a former member of the Missouri House of Representatives who has suffered from chronic depression, alcoholism, and drug addiction. After his arrest, Feigenbaum revealed to law enforcement officers the names of people who had supplied him with cocaine and with whom he had used cocaine. One of the names Feigenbaum disclosed was Dewey G. Crump ("Crump"), a Missouri state representative. Approximately 10 days after his arrest, Feigenbaum spoke with agents of the Drug Enforcement Agency ("DEA") and agreed to cooperate with the DEA and the U.S. Attorney's office in an investigation of Crump.

Feigenbaum and Crump had known one another when Feigenbaum was a member of the Missouri House of Representatives. At trial, Feigenbaum testified that during his term in the Missouri House he and Crump had used drugs together. Feigenbaum further testified that he had paid or offered to pay Crump for the drugs on one or two occasions.

Prior to the investigation, Crump had no criminal record and had been a Missouri state representative for nearly 12 years. Feigenbaum testified at trial that at the time the investigation was undertaken, neither he nor the DEA knew whether Crump was still involved in drugs. Indeed, at the time of his arrest, Feigenbaum had not seen or talked to Crump for over a year.

Pursuant to his agreement to cooperate in an investigation of Crump, Feigenbaum traveled to Jefferson City, Missouri to reestablish his friendship with Crump and determine if Crump was still involved with drugs. Feigenbaum approached Crump on the floor of the House of Representatives and asked if they could talk later in Crump's office. Once in Crump's office, Feigenbaum motioned to a radio which was shaped like a Coca Cola bottle and asked Crump if he was "still doing that." Feigenbaum testified that Crump nodded his head in the affirmative and instructed Feigenbaum to be quiet. Crump warned Feigenbaum to be careful about discussing drugs in Jefferson City, but also said that

---

[*] The HONORABLE DAVID S. DOTY, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

he would work on obtaining some cocaine. After the meeting, Feigenbaum reported to a DEA agent that he had confirmed Crump's involvement with cocaine.

Feigenbaum and Crump met briefly at least ten times in the following seven weeks. Feigenbaum initiated the meetings and the conversations which transpired between the two were not tape-recorded. Although these conversations were not recorded, Feigenbaum submitted several written statements memorializing his meetings with Crump. On March 7, 1990, Feigenbaum submitted a written statement which indicated that Crump had supplied drugs to "campaign workers, elected officials, state and local, and his staff." The written statement did not indicate the names of the people to whom Crump had supplied drugs. On April 20, 1990, in their first tape-recorded conversation, Feigenbaum and Crump spoke on the telephone. Feigenbaum urged Crump to obtain drugs for him and the two arranged a meeting for the following day at Crump's apartment.

The following day Feigenbaum traveled to Crump's apartment. Feigenbaum was wearing a "wire" which the DEA had provided for the purpose of recording Feigenbaum and Crump's exchange. Crump suspected that Feigenbaum might be wearing such a recording device and patted down Feigenbaum twice after Feigenbaum had entered the apartment. Despite his efforts, Crump failed to detect the wire. Although the two met in Crump's apartment as planned, Crump did not produce the cocaine. After Feigenbaum indicated that he would accept drugs other than cocaine, Crump searched through his apartment and handed over one tablet of phentermine HCL and four white tablets of a non-controlled substance. Crump also outlined a code which was to be used when the two were discussing drugs. "Booze" was to be substituted for cocaine, and "wine coolers" was to be substituted for "white crosses" which is a type of "speed."

Feigenbaum and Crump's next meeting occurred on April 27, 1990. In a tape-recorded telephone conversation, Feigenbaum asked Crump if he had obtained any cocaine and indicated that he wanted some. Crump responded that he had acquired a quantity of cocaine. Later that day, the two met at Crump's apartment and Crump gave Feigenbaum a vial of cocaine.

The next exchange occurred on May 11, 1990. In a tape-recorded telephone conversation, Feigenbaum and Crump once again talked about obtaining drugs. Crump indicated that he would not provide Feigenbaum with any drugs until Feigenbaum brought with him two women with whom Crump liked to socialize. Crump reiterated this position in a tape-recorded conversation which took place on May 22, 1990.

Feigenbaum again telephoned Crump on May 29, 1990, and this time reached him at his boat on the Lake of the Ozarks. During the conversation the two set up a meeting for the following day in St. Louis. The two met the next day as planned and again discussed Feigenbaum purchasing drugs from Crump. On the following day, May 31, 1990, the two met once again at Crump's apartment where Crump provided Feigenbaum with cocaine in exchange for $300.

Crump was arrested on June 13, 1990. On June 15, 1990, a four count indictment was filed against Crump. Count I of the indictment alleged conspiracy to possess and distribute phentermine HCL, cocaine, and marijuana from 1976 through 1990. Count II alleged distribution of phentermine HCL on April 21, 1991. Count III alleged distribution of cocaine on April 27, 1990. Count IV alleged distribution of cocaine on May 31, 1991. On June 27, 1990, a superseding indictment was filed against Crump. The superseding indictment included Counts I through IV of the original indictment and added six counts alleging the possession of various drugs.[2]

In September 1990, defendant's jury trial began in the Federal District Court for the

---

**2.** The new counts alleged possession of methaqualone, meperidrine (demerol), diazepam, flurazepam, alprazolam, and diethylpropion.

Eastern District of Missouri. In his opening statement, defense counsel indicated to the jury that Crump's defense was entrapment. In its case-in-chief the government called Feigenbaum and had him testify about the investigation which led to Crump's indictment. On cross-examination of Feigenbaum, defense counsel attempted to elicit the names of campaign workers, elected officials and staff members to whom Crump had allegedly distributed drugs. The court disallowed this cross-examination, however, holding that such information was collateral to the issues at trial. The government also called Lisa Clark. Clark testified that from 1984 through 1989 she had a sexual relationship with Crump, that she had strong feelings about him and that he had provided her with drugs. Defense counsel attempted to limit Clark's testimony on the grounds that it was unfairly prejudicial. The court held that the probative value of Clark's testimony outweighed its prejudicial effect and admitted the testimony.

At the close of the government's case, the court entered a judgment of acquittal on Count I. The court denied Crump's motion for judgment of acquittal on Counts II through X at the close of the government's case-in-chief and at the close of all the evidence. In accordance with Crump's request, the court instructed the jury on the affirmative defense of entrapment. On September 12, 1990, the jury returned its verdict finding Crump guilty on Counts II, III and IV, and not guilty on Counts V through X.

Crump appeals his conviction on three grounds. First, Crump contends that the district court erred in failing to enter a judgment of acquittal because the evidence established that he was entrapped as a matter of law. Second, Crump argues that the district court denied him his right to confrontation by limiting the cross-examination of Feigenbaum. Finally, Crump maintains that the district court erred in admitting the testimony of Clark regarding Crump's prior bad acts because those acts were not reasonably close in time to the charges before the jury and were not relevant. Crump also argues that Clark's testimony created unfair prejudice which substantially outweighed its probative value.

All three of the grounds on which Crump bases his appeal go to the issue of entrapment and more specifically to Crump's predisposition to commit the crimes of which he was convicted. Consequently, we will first address Crump's evidentiary arguments and conclude with a discussion of the entrapment defense.

## I.

### Limitation on Cross–Examination

■ On March 7, 1990, Feigenbaum provided a written statement to government agents which alleged that Crump had supplied drugs to "campaign workers, other elected officials, state and local, and his staff." At trial, the government questioned Feigenbaum about the statement, but did not ask him to identify the particular individuals to whom Crump had allegedly distributed drugs. Rather, the government limited its direct examination to Crump's actions and statements as they related to the investigation and the charges which were the subject of the trial. On cross-examination, defense counsel attempted to elicit from Feigenbaum the names of the particular individuals to whom Crump had distributed drugs as alleged in the March 7, 1990, statement. The government objected to the expansive cross-examination. The district court sustained the government's objection and disallowed, as collateral to the issues at trial and irrelevant, defense counsel's questions calling for identification of particular individuals.

Crump contends that the limitation that the district court placed on his cross-examination of Feigenbaum deprived him of his sixth amendment right to confrontation. Crump argues that the limitation on Feigenbaum's cross-examination excluded evidence which would have aided the jury in determining both Feigenbaum's credibility and whether Crump was entrapped.

The confrontation clause of the sixth amendment guarantees the right of an accused in a criminal prosecution "to be con-

fronted with the witnesses against him." *United States v. Bartlett*, 856 F.2d 1071, 1088 (8th Cir.1988) (quoting *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). The right of confrontation means more than being allowed to confront the witness physically. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431, 1434, 89 L.Ed.2d 674 (1986) (citing *Davis*, 415 U.S. at 308, 94 S.Ct. at 1105). The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. *Davis*, 415 U.S. at 315, 94 S.Ct. at 1109. There are limits to the right to cross-examination which the confrontation clause guarantees, however. *United States v. Risnes*, 912 F.2d 957, 959 (8th Cir.1990). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435. Indeed, in *Delaware v. Fensterer*, the Supreme Court held that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam) (citing *Ohio v. Roberts*, 448 U.S. 56, 73 n. 12, 100 S.Ct. 2531, 2543 n. 12, 65 L.Ed.2d 597 (1980)) (emphasis in original).

■ Alleged confrontation clause errors are subject to harmless-error analysis. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. As the Supreme Court has stated:

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (citing *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972)).

Crump maintains that his objective in the attempted cross-examination was to demonstrate to the jury that Feigenbaum could not provide the name of a single person to whom Crump had allegedly distributed drugs. Crump was attempting to prove that Feigenbaum had no knowledge that Crump was involved in drugs when he supplied the DEA with the information which led to the investigation. Crump contends that allowing broader cross-examination would have served the dual purposes of attacking Feigenbaum's credibility and bolstering Crump's entrapment defense.

In support of his position that the district court's ruling constitutes reversible error, Crump relies on *United States v. Barnes*, 798 F.2d 283 (8th Cir.1986). In *Barnes*, a DEA agent tape-recorded conversations between a paid government informant and appellant Barnes. After Barnes was indicted, the government provided him with a tape of six such conversations. On three separate occasions, at the preliminary hearing, the omnibus hearing and an interview, the DEA agent told the prosecutor and Barnes's counsel that no other recorded conversations existed. The DEA agent also indicated that he was not aware of any conversations between the informant and Barnes other than the six taped conversations. Shortly thereafter, the DEA agent revealed a second set of nine taped conversations between the informant and Barnes. In several of the conversations the DEA agent's voice was audible in the background. At trial, the DEA agent testified about the investigation of Barnes. During cross-examination, Barnes sought to impeach the agent's credibility by confronting

him with his pretrial statements relating to the tapes. The district court refused to permit this line of questioning. Barnes was convicted and appealed. On appeal, we concluded that evidence relating to the DEA agent's pretrial statements was important to the jury's determination of whether the agent was a credible witness. We held that the trial court's limitation on Barnes's cross-examination of the DEA agent violated Barnes's sixth amendment right to confrontation. In support of our decision, we stated that "[t]he trial court's limitation was supported only by flawed reasoning, not justifiable trial concerns." *Id.* at 290.

*Barnes* is distinguishable from the instant case. In *Barnes*, defense counsel attempted to cross-examine the DEA agent on a matter that was directly related to the investigation which led to Barnes's indictment. In the instant case, defense counsel attempted to cross-examine Feigenbaum about the identity of *other* individuals to whom Crump had allegedly distributed drugs—a matter collateral to the investigation which led to Crump's indictment. Comments about Crump's pre-investigatory acts are not directly related to the DEA's investigation of Crump. Moreover, while the limitation in *Barnes* was "supported only by flawed reasoning," [3] the limitation in this case was supported by "justifiable trial concerns." Here, Feigenbaum's statements regarding Crump's alleged distribution of drugs to his staff and other members on the Missouri legislature were not only collateral to the crimes alleged in the indictment, but given the politically charged nature of this case may well have confused the issues at trial. [4]

The district court viewed Crump's proposed cross-examination as an attempt to collaterally impeach the credibility of a witness in a manner that was unnecessary and improper. Courts have discretion to limit cross-examination on collateral matters. *United States v. Campbell*, 845 F.2d 782, 788 (8th Cir.1988). The district court did not abuse its discretion in disallowing Crump's attempt to collaterally impeach Feigenbaum.

We also note that the limitation on Feigenbaum's cross-examination was not dispositive of Feigenbaum's credibility. Indeed, the district court stated that Crump's counsel "vigorously attacked Feigenbaum's credibility throughout the trial." *United States v. Crump*, No. S1–90–102 CR(2), slip op. at 4 (D.Mo. Jan. 8, 1991). This fact distinguishes the present case from *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Van Arsdall*, a key prosecution witness testified after charges against him were dismissed. The district court prohibited all inquiry into the possibility that the witness would be biased as a result of the dismissal of the charges against him. The district court's ruling eliminated "all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony." *Id.* at 679, 106 S.Ct. at 1435. The Supreme Court held that the district court's ruling violated defendant's rights secured by the confrontation clause. In the present case, the district court's ruling did not have

3. The court in *Barnes* refused to permit defense counsel to cross-examine the DEA agent because the court had previously determined that the agent's pretrial statements did not warrant a dismissal of the indictment against Barnes. The trial court concluded that its previous ruling foreclosed consideration of the agent's statements for other purposes such as determining his credibility. 798 F.2d at 288–89.

4. There was great potential for confusion of the issues in this case. The involvement of former and current Missouri representatives heightened the public's and the press's interest in the trial. The media's keen interest in the proceedings is evidenced by the fact that when audio tapes were played at the trial, headphones were made available to members of the press so that they could better hear the tapes. Moreover, three local television stations moved the court for an order permitting their personnel to copy transcripts and those portions of audio tapes admitted into evidence, with the copying to be performed as soon as possible after admission. The district court denied the motion citing the deference it had already given to the media in providing headphones and the additional burden which granting the motion might place on the court.

the effect of eliminating all inquiry into the possibility that Feigenbaum was biased. Indeed, the district court allowed wide ranging cross-examination of Feigenbaum. In sharp contrast to *Van Arsdall*, Feigenbaum was specifically questioned about the plea agreement he entered into with the government. Consequently, the district court's limitation on the cross-examination of Feigenbaum did not stifle Crump's attack on Feigenbaum's credibility so as to deprive Crump of his sixth amendment right to confrontation.

Crump next argues that the district court erred because it considered the effect of the cross-examination limitation only as it related to Crump's entrapment defense. In support of this position, Crump relies on our holding in *Barnes* that an impermissible limitation on cross-examination can affect both witness credibility determinations and a defendant's entrapment defense. Crump is correct in stating that an unconstitutional limitation on cross-examination may well affect a defendant's defense of entrapment. *Barnes*, 798 F.2d at 290. In *Barnes*, however, the attempted cross-examination bore directly on the investigation of Barnes and the DEA agent's attempts to involve him in a drug distribution scheme.[5] In the present case, the attempted cross-examination bore on facts which were well removed from the allegations contained in the indictment and the issues at trial. The cross-examination in which Crump desired to engage was substantially removed from Crump's attempt to prove that he was not predisposed to commit the crimes alleged in the indictment and thus bore only faint relation to Crump's entrapment defense. Accordingly, we cannot conclude that Crump's confrontation rights were violated by the district court's limitation on cross-examination as it related to the defense of entrapment.

District courts retain broad discretion to limit cross-examination beyond that necessary to satisfy the sixth amendment. *United States v. Campbell*, 845 F.2d 782, 788 (8th Cir.1988) (citing *United States v.*

*Wilson*, 787 F.2d 375, 386–87 (8th Cir. 1986)). District court decisions on such matters will be reversed only when there has been a clear abuse of discretion and a showing of prejudice to the defendant. *Id.* (citing *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984)). Even if the damaging potential of Crump's attempted cross-examination of Feigenbaum were fully realized, we hold that the district court's limitation on that cross-examination was harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438. Consequently, the district court did not violate Crump's sixth amendment right to confrontation. Moreover, because the limitation did not constitute a clear abuse of discretion and there has been no showing of prejudice to the defendant, we will not reverse the district court's ruling.

## II.

### *Admission of Lisa Clark's Testimony*

At trial, Clark testified about her relationship with Crump. Clark told the jury that in 1986, 1987 and 1988 she had sex with Crump four or five times a year. Clark further testified that from February to April of 1989 she saw Crump three to four times a week and had sex with him on those occasions. Clark explained that Crump gave her drugs on the occasions on which they had sex.

The government offered Clark's testimony under Federal Rule of Evidence 404(b) to support its contention that Crump was predisposed to distribute drugs. Crump objected to the admission of Clark's testimony on the grounds that the unfair prejudice caused by the testimony would outweigh its probative value. The court admitted Clark's testimony and instructed the jury that the testimony was admitted for the limited purpose of showing Crump's intent and predisposition to distribute narcotics. Crump argues that the district court erred in admitting Clark's testimony because the acts Clark referred to were not

---

5. In the background of one of the second set of tape-recorded conversations, the DEA agent was heard whispering "egg him on" to the paid informant who was speaking to Barnes. 798 F.2d at 288.

reasonably close in time to the acts alleged in the indictment and the unfair prejudice caused by the testimony outweighed its probative value.

Evidence of prior bad acts is admissible if: (1) the evidence is relevant to a material issue; (2) the prior bad acts are similar in kind and reasonably close in time to the crime charged; (3) there is sufficient evidence to support a finding by the jury that the defendant committed the prior acts; and (4) the potential prejudice of the evidence does not substantially outweigh its probative value. *United States v. Anderson*, 879 F.2d 369, 378 (8th Cir.1989) (citing *United States v. Mothershed*, 859 F.2d 585, 588 (8th Cir.1988)).

First, the prior bad acts evidence was relevant to a material issue. Crump raised the defense of entrapment in his opening statement and relied on the defense throughout the trial and in his closing argument. Moreover, the district court instructed the jury on the entrapment defense. Once Crump asserted the defense of entrapment, the burden of proof shifted to the government to prove beyond a reasonable doubt that Crump was predisposed to commit the crimes alleged in the indictment. *United States v. Lard*, 734 F.2d 1290, 1294 n. 3 (8th Cir.1984) (citing *United States v. French*, 683 F.2d 1189, 1191 n. 1 (8th Cir.1982)). Consequently, Clark's testimony was relevant to the material issue of Crump's predisposition. We have consistently held that prior bad act evidence is admissible to show a defendant's predisposition once the defendant has asserted the entrapment defense. *United States v. Padilla*, 869 F.2d 372, 380 (8th Cir.1989); *United States v. French*, 683 F.2d 1189, 1193 (8th Cir.1982) (citing *United States v. Demetre*, 464 F.2d 1105, 1108 (8th Cir. 1972); *United States v. Viviano*, 437 F.2d 295, 299 (2d Cir.1971)). In its effort to rebut a defendant's entrapment defense, the prosecution may offer testimony of defendant's prior bad acts and that testimony may be admitted to prove defendant's actions in conformity therewith. *Padilla*, 869 F.2d at 380 (testimony indicating that defendant was in the business of selling illegal drugs was admissible to show defen-

dant's predisposition to traffic in controlled substances); *French*, 683 F.2d at 1193 (previous purchase of discounted food stamps was relevant to the question of defendant's predisposition to later buy discounted food stamps); *Demetre*, 464 F.2d at 1108 (defendant's earlier passing of counterfeit currency was admissible to show predisposition to commit later acts of counterfeiting and forgery). Accordingly, Clark's testimony that Crump had provided her with drugs during their five-year relationship was relevant to the material issue of whether Crump was predisposed to distribute drugs as alleged in the indictment.

Second, Crump's prior bad acts to which Clark testified are similar in kind and reasonably close in time to the drug distribution crimes with which Crump was charged. There is little question that Crump's practice of providing Clark with drugs is substantially akin to the drug distribution crimes alleged in the indictment and we now hold that the two acts are "similar in kind." Crump argues that even if the acts are similar in kind, they were not sufficiently close in time to allow admission of his previous distribution of drugs to Clark. We disagree. Clark testified that from 1986 through April 1989, she was engaged in a sexual relationship with Crump. Clark also testified that Crump would give her drugs on occasions when they had sex. According to Clark's uncontradicted testimony, Crump last provided her with drugs in April 1989. This evidence was not so temporally removed from the acts alleged in the indictment so as to render it inadmissible. This conclusion is in accord with our previous decisions. In *United States v. Williams*, we held that evidence gained in the execution of search warrants on January 16, 1986, and October 28, 1987, was admissible in defendant's trial on charges which resulted from an investigation which began on January 15, 1988. 895 F.2d 1202, 1204 (8th Cir.1990). Similarly, in *United States v. Haynes*, we held that a co-defendant's testimony that defendant had operated "weed houses" from the mid-1970's to the mid-1980's was admissible in defendant's trial for the purchase of

drugs in mid–1986. 881 F.2d 586, 589 (8th Cir.1989). Crump's prior bad acts are similar in kind and reasonably close in time to the crimes charged in the indictment.

Third, there is sufficient evidence to support a finding by the jury that Crump committed the prior acts. Clark's testimony regarding Crump's distribution of drugs to her was uncontradicted and Crump does not now contend that the evidence was insufficient to support a finding by the jury that Crump in fact provided Clark with drugs.

Finally, the potential prejudice of the evidence does not substantially outweigh its probative value. Crump argues that Clark's testimony was extremely prejudicial for two reasons. First, Crump contends that Clark's testimony centered on her sexual relationship with Crump.[6] Second, Crump asserts that the unfair prejudice created by Clark's descriptions of her sexual encounters with Crump was compounded by Clark's testimony that at the time of trial she was 24 years old and Crump was 43 years old. We do not deny that the admission of Clark's testimony might well have been prejudicial, especially in light of the nature of Clark and Crump's relationship and the disparity in their ages. Mere prejudice is not enough, however. There must be unfair prejudice that outweighs the probative value of the evidence. *Anderson*, 879 F.2d at 378–79. Here, the prior acts evidence was highly probative. For a period of five years Clark was close to Crump and gained personal knowledge of his disposition with with respect to distributing drugs. This knowledge, as communicated through her testimony, related directly to the acts alleged in the indictment. Consequently, although Clark's testimony may have been prejudicial, its prejudicial effect did not outweigh its probative value.[7]

Clark's testimony relating to Crump's prior distribution of drugs satisfies the four requirements for admissibility of prior bad acts evidence. The district court has broad discretion in determining the admissibility of bad acts evidence. *United States v. Newton*, 912 F.2d 212, 214 (8th Cir.1990) (citing *United States v. Evans*, 697 F.2d 240, 248 (8th Cir.1983)). Moreover, the admission of such evidence is reversible only " 'when it is clear that the evidence has no bearing on the case.' " *Id.* (quoting *United States v. Williams*, 895 F.2d at 1205). Once Crump asserted the defense of entrapment, Clark's testimony relating to his previous drug distribution was admissible to prove Crump's predisposition to distribute drugs as alleged in the indictment. The district court did not abuse its discretion in admitting the testimony.

### III.

*Crump's Entrapment Defense*

█ Crump contends that the district court erred in failing to enter a judgment of acquittal because the evidence presented at trial established that Crump was entrapped as a matter of law. Crump raised the issue of entrapment as a matter of law for the first time in his motion for a new trial which was submitted after the jury had returned its verdict. The government argues that Crump's failure to raise this issue at trial precludes us from reviewing this issue on appeal. The government is correct that as a general matter we will review a claim only if the appellant has preserved the right of review by raising the issue in a timely and specific manner at or before trial. *See Gregory By Gregory v. Honeywell, Inc.*, 835 F.2d 181, 184 (8th Cir.1987) (citing *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976)). Although Crump did not raise the issue of entrapment as a matter of law at

---

**6.** As an example of prejudicial testimony, Crump points to Clark's testimony that on one day, she and the defendant had sex in his office at the Capitol Building, followed by a second sexual interlude in the car on the way to St. Louis, and yet a third following a fund raiser that night.

**7.** The same analysis applies to Crump's claim that the evidence should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice.

trial, both the government and Crump have had an opportunity to brief and argue the issue. Consequently, we proceed on the premise that this issue is properly before us. *In re Modern Textile*, 900 F.2d 1184, 1191 (8th Cir.1990).

■ Entrapment is an affirmative defense, and the question of entrapment is generally for the jury. *United States v. Williams*, 873 F.2d 1102, 1104 (8th Cir. 1989) (citing *United States v. Underhill*, 753 F.2d 645, 647 (8th Cir.1985)). The jury rejected Crump's entrapment defense and found him guilty of distributing drugs as alleged in Counts II, III and IV of the indictment. Moreover, the district court denied Crump's motion for judgment of acquittal. In order to prevail on appeal from the district court's denial of his acquittal motion, Crump must establish the following two elements as a matter of law: (1) that the government induced him to engage in a crime; and (2) that he lacked the necessary predisposition to perform the criminal conduct. *United States v. Hinton*, 908 F.2d 355, 357 (8th Cir.1990) (citing *Mathews v. United States*, 485 U.S. 58, 62–63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988)). The government does not argue that it did not induce Crump to engage in drug distribution and for all practical purposes concedes that the first element has been established. The real issue here is whether Crump has established that he lacked the necessary predisposition to perform the criminal conduct of which he was convicted.

■ Crump maintains that he was entrapped as a matter of law. In effect, Crump argues that notwithstanding the admission of Clark's testimony and the limitation which the district court placed on his cross-examination of Feigenbaum, the evidence demonstrates that he was not predisposed to distribute drugs. In reviewing a district court's denial of a motion for acquittal based on the defense of entrapment, we view the evidence in the light most favorable to the government. *United States v. Pfeffer*, 901 F.2d 654, 656 (8th Cir.1990) (citing *Williams*, 873 F.2d at 1104)). We will reverse for the govern-

ment's failure to establish predisposition only when the evidence clearly indicates:

> 'That a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the criminal act at the urging of the government agent.'

*United States v. Beissel*, 901 F.2d 1467, 1469 (8th Cir.1990) (quoting *United States v. Resnick*, 745 F.2d 1179, 1186 (8th Cir. 1984)). Viewed from the appellant's perspective, entrapment is established as a matter of law only when the absence of appellant's predisposition to commit a crime is apparent from the uncontradicted evidence. *United States v. Jacobson*, 916 F.2d 467, 470 (8th Cir.1990) (citing *United States v. Thoma*, 726 F.2d 1191, 1197 (7th Cir.1984)) *cert. granted*, —— U.S. ——, 111 S.Ct. 1618, 113 L.Ed.2d 716 (1991).

Predisposition focuses on "whether the [appellant] was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetuate the crime." *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886. Both Feigenbaum and Clark testified that Crump had provided them with drugs in the past. This testimony directly relates to Crump's predisposition to continue a course of conduct he had previously established. Crump contends that the value of Feigenbaum's and Clark's testimony must be radically discounted because the two witnesses had not had any personal contact with him for over a year. Even if we were to accept Crump's argument on that point, which we do not, there is more than enough additional evidence to prove that Crump was not an "unwary innocent." It was established at trial that Crump proceeded in his negotiations with Feigenbaum with extreme caution. Crump warned Feigenbaum not to speak on the phone about drugs and instructed him to use a code when the two were discussing drugs. Indeed, Crump twice searched Feigenbaum for a hidden wire he suspected Feigenbaum might be wearing. Moreover, the facts surrounding Crump's distribution of phentermine HCL and cocaine to Feig-

enbaum indicate that Crump was familiar with the means and methods necessary to successfully distribute drugs. Feigenbaum did not induce Crump to purchase drugs. Rather, Feigenbaum sought out Crump as a source of narcotics. Crump's ability to provide Feigenbaum with cocaine after only two months of negotiations indicates an ability to acquire drugs. Such an ability points to experience with drugs and is probative of Crump's predisposition to engage in drug distribution. *See United States v. Hinton*, 908 F.2d 355, 358 (8th Cir.1990). Similarly, Crump's ability to provide Feigenbaum with phentermine HCL when he could not produce cocaine speaks to Crump's ability and predisposition to distribute drugs of more than one variety. When we examine the evidence in the light most favorable to the government, we conclude that Crump has failed to prove that he was not predisposed to commit the crimes of which he was convicted.

Finally, Crump argues that the DEA's decision to target him for prosecution was so outrageous as to violate due process. Crump contends that at the time Feigenbaum implicated him, Feigenbaum did not know that Crump was still involved with drugs and had no personal contact with him for over sixteen months. Crump asserts that the DEA's decision to concentrate its efforts on him, given the scant evidence regarding his involvement in criminal activity, violated his due process rights. We review the government's involvement in undercover investigations under due process principles. *United States v. Irving*, 827 F.2d 390, 393 (8th Cir.1987) (per curiam). Due process limitations "come into play only when the [g]overnment activity in question violates some protected right of the defendant." *United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir.1990) (citing *Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976)) (emphasis omitted). Crump has no constitutional right to be free of investigation. *Id.* (citing *United States v. Trayer*, 898 F.2d 805, 808 (D.C.Cir.1990)). In *Jacobson*, we recognized that due process grants wide leeway to law enforcement agents in their investigation of crime. *Id.* (citation omitted). We also concluded that the Constitution does not require reasonable suspicion of wrongdoing before the government can begin an undercover investigation. *Id.* (citation omitted).

Although Feigenbaum's and the DEA's knowledge of Crump's involvement with drugs may have been somewhat temporally removed from the decision to make Crump the subject of investigation, we cannot say that the DEA's decision to target Crump was so outrageous as to violate his due process rights. Accordingly, because Crump has failed to demonstrate that he was entrapped as a matter of law or that the DEA's investigation violated due process, we will not reverse the district court's denial of Crump's motion for a judgment of acquittal.

*Conclusion*

For the reasons stated herein, we affirm the district court's limitation on Crump's cross-examination of Feigenbaum and admission of Clark's testimony relating to Crump's prior bad acts. We also affirm the district court's denial of Crump's motion for judgment of acquittal. Accordingly, Crump's conviction is affirmed.