# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1331

_____

United States of America,               *
                                        *
            Appellee,                   *
                                        *    Appeal from the United States
      v.                                *    District Court for the Eastern
                                        *    District of Missouri.
Louis D. Galvan,                        *
                                        *
            Appellant.                  *

_____

Submitted: September 14, 2004
Filed: May 17, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BRIGHT, and FAGG, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Louis Galvan appeals his conviction and sentence for one count of possessing pseudoephedrine knowing, or with reasonable cause to believe, that it would be used to manufacture methamphetamine, *see* 21 U.S.C. § 841(c)(2). Mr. Galvan challenges several rulings that the district court[1] made during trial and the district court's application of the sentencing guidelines. We affirm.

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

Police officers conducting surveillance of a Wal-Mart store watched Mr. Galvan as he purchased three boxes of pseudoephedrine pills, the maximum quantity that Wal-Mart allowed a person to buy at one time. The officers, who were not in uniform, followed Mr. Galvan in an unmarked vehicle as he drove to six other stores in the vicinity, at one of which the officers saw Mr. Galvan leave with a bag. Eventually the officers' pursuit led to a residential neighborhood, where Mr. Galvan abruptly made a U-turn and came to a stop with his car facing the front of the officers' vehicle. At that point, the officers exited their vehicle, approached Mr. Galvan's car, and verbally identified themselves as they waved their badges. Mr. Galvan, however, backed up his vehicle and drove away. The officers followed him into a cul-de-sac, where Mr. Galvan attempted to flee on foot before being caught. Following his arrest, Mr. Galvan was given *Miranda* warnings and declined to provide a written statement, although he told the officers that he would show them some methamphetamine labs if he could avoid prison. In Mr. Galvan's vehicle, the officers found two boxes of pseudoephedrine pills on the passenger's seat and a bag containing more pills, which was stashed inside a heating duct near the floorboard.

II.

Mr. Galvan first argues that the district court clearly abused its discretion when it refused to allow him to re-cross-examine a government witness. *See United States v. Crump*, 934 F.2d 947, 953 (8th Cir. 1991). The witness was Detective Gerald Williams, one of the police officers who arrested Mr. Galvan. On cross-examination, Mr. Galvan's counsel asked Detective Williams why the bag of pseudoephedrine pills seized from a heating duct in Mr. Galvan's vehicle was not tested for fingerprints. Counsel also asked Detective Williams whether he had been trained to testify in court and whether convictions in his cases would benefit him professionally. In response, the government on re-direct examination elicited testimony that markings on the pills found in the heating duct were the same as those on the pills in the boxes found on the passenger's seat of the vehicle and that Detective Williams had not fabricated any

-2-

evidence in Mr. Galvan's case. When Mr. Galvan's counsel asked for an opportunity to re-cross-examine Detective Williams in order to show that all pseudoephedrine pills of the brand found on the passenger's seat display the same markings and to clarify that Mr. Galvan was not accusing Detective Williams of fabricating evidence, the district court refused.

We conclude that the district court did not clearly abuse its discretion in preventing Mr. Galvan from re-cross-examining Detective Williams. First, we allow district courts "wide latitude" in limiting cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Since Detective Williams did not assert that the pills from the heating duct and the pills from the boxes were the only ones that shared the same markings, and since Detective Williams's testimony that he did not fabricate evidence responded to Mr. Galvan's questions about the detective's conflict of interest, the testimony on re-cross-examination would likely have been only marginally relevant. Therefore the district court acted within its discretion. *See id.*

Second, even if the marginal relevance of the re-cross-examination were not enough to support the district court's ruling, Mr. Galvan had opportunities to question other government witnesses about the pills found in the heating duct. Indeed, Mr. Galvan asked the forensic scientist who tested the pills about fingerprints on the bag found in the heating duct, but Mr. Galvan did not inquire about the markings on the pills. Because Mr. Galvan "had other ways to obtain the effect that the excluded examination would have allegedly established," the district court did not violate the confrontation clause. *See United States v. Brown*, 110 F.3d 605, 611 (8th Cir. 1997).

III.

Mr. Galvan next contends that the district court abused its discretion when it permitted the government to put an expert witness on the stand, since Detective Williams, who testified only as an ordinary witness, possessed enough narcotics expertise to testify to the roles of pseudoephedrine and purchasers of

pseudoephedrine in the production of methamphetamine. The testimony of an expert witness in addition to Detective Williams, Mr. Galvan maintains, was unnecessary, cumulative, and prejudicial. *Cf. United States v. Molina*, 172 F.3d 1048, 1056-57 (8th Cir. 1999), *cert. denied*, 528 U.S. 893 (1999). We conclude that the district court did not abuse its discretion by allowing a separate expert witness to testify.

Although Mr. Galvan may be right that Detective Williams could have testified as an expert, he fails to cite any authority that requires a fact witness to testify also as an expert when the fact witness is so qualified. Instead, he relies on cases in which we rejected the argument that the trial court erred in allowing a police officer to testify as an expert witness. *See, e.g.*, *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001), *cert. denied*, 535 U.S. 1029, 1072, 1087 (2002) & 537 U.S. 857 (2002). Such authority is an insufficient basis for holding that the district court erred by not compelling Detective Williams to testify as an expert.

Further, the expert's testimony in this case was not redundant to Detective Williams's testimony. Detective Williams testified about the circumstances of the pursuit and subsequent arrest of Mr. Galvan, while the expert testified about the role of pseudoephedrine in manufacturing methamphetamine and the telltale signs that pseudoephedrine is being purchased for that illicit purpose. Also, the expert helped the jury understand why Mr. Galvan's possession of a large quantity of pseudoephedrine, especially pseudoephedrine pills that had been removed from their packaging (which was the case for the pills stashed inside the heating duct), suggests that Mr. Galvan knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine.

IV.

Mr. Galvan's last assignment of error with respect to his conviction relates to the district court's jury instruction on the meaning of the phrase "reasonable cause to believe," as used in the statute under which he was convicted, *see* 21 U.S.C.

-4-

§ 841(c)(2). Mr. Galvan asked the district court to instruct the jury that " 'reasonable cause to believe' ... requires an inquiry into what this particular defendant had reason to believe" and is a standard "akin to actual knowledge." *See United States v. Saffo*, 227 F.3d 1260, 1268-69 (10th Cir. 2000), *cert. denied*, 532 U.S. 974 (2001). Mr. Galvan argues that such an instruction was necessary to avoid constitutional problems that would result from an objective *mens rea* requirement, and that the district court erred in not adopting the proffered instruction. First, we note that Mr. Galvan's proffered instruction incorrectly states the applicable law: The proffered instruction would "effectively equate[] reasonable cause to believe with actual knowledge" and thereby render the "reasonable cause to believe" phrase redundant. *See United States v. Kaur*, 382 F.3d 1155, 1157 (9th Cir. 2004). The district court therefore acted correctly in rejecting it. As for Mr. Galvan's constitutional objections, we see no constitutional infirmity in the statute's visiting a criminal penalty on a person who had reasonable cause to believe that he or she possessed a substance that would be used to manufacture methamphetamine. *Cf. United States v. Sdoulam*, 398 F.3d 981, 987-88 (8th Cir. 2005); *United States v. Bewig*, 354 F.3d 731, 737-38 (8th Cir. 2003). Therefore the district court did not err when it instructed the jury using only the language of the statute.

V.

We now turn to the assignments of error that Mr. Galvan raises with respect to his sentence. Mr. Galvan first argues that the district court erred when it increased his offense level because he recklessly endangered another person when he fled, *see* U.S.S.G. § 3C1.2. Mr. Galvan asserts that there was insufficient evidence that he knew that he was fleeing from law enforcement officers. But there was evidence that, when the officers pursued Mr. Galvan to a residential neighborhood, he abruptly made a U-turn. The record also supports a finding that the officers exited their unmarked vehicle in order to confront Mr. Galvan but that he drove around the officers, close enough that he recklessly endangered the officers. Although the record contains evidence that Mr. Galvan could not hear the officers when they identified

themselves as such (Mr. Galvan's hearing is impaired, his truck's windows were closed, and his radio was playing), other evidence suggests that Mr. Galvan did know that the two men approaching his truck were police officers: One officer wore a jersey emblazoned "police," and both officers displayed their badges as they approached Mr. Galvan's vehicle. In the face of such evidence, we cannot say that the district court clearly erred. *See United States v. Moore*, 242 F.3d 1080, 1081-82 (8th Cir. 2001).

Mr. Galvan also challenges the sufficiency of the evidence on which the district court denied him a three-level downward adjustment under U.S.S.G. § 2D1.11(b)(2). Mr. Galvan would be ineligible for a downward adjustment under § 2D1.11(b)(2) if he "knew or believed that the [pseudoephedrine] was to be used to manufacture a controlled substance unlawfully." U.S.S.G. § 2D1.1(b)(2). Section 841(c)(2), the statute under which Mr. Galvan was convicted, permits a conviction even if the defendant's *mens rea* did not rise to knowledge or belief; therefore the district court had to make an additional finding when it denied Mr. Galvan an adjustment under § 2D1.11(b)(2). Because Mr. Galvan offered to take Detective Williams to methamphetamine labs in exchange for leniency, and because the circumstances of his arrest tended to show that he purchased pseudoephedrine for use in the manufacture of methamphetamine, the district court did not clearly err when it found that Mr. Galvan did not qualify for a downward adjustment under § 2D1.11(b)(2).

After this case was briefed and argued, Mr. Galvan challenged his sentence on the ground that the district court violated his sixth amendment rights by finding facts that formed the basis for an enhancement of his sentence. *See United States v. Booker*, 125 S. Ct. 738 (2005). Mr. Galvan is not entitled to relief because he cannot show that the district court's error affected his substantial rights. *See United States v. Pirani*, No. 03-2871, 2005 WL 1039976, at *4-*7 (8th Cir. April 29, 2005).

## VI.

We affirm Mr. Galvan's conviction and sentence.

_____