UNITED STATES of America, Appellee,

v.

John Edward FOSTER, Appellant.

No. 86–1873.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 16, 1987.

Decided April 6, 1987.

Lee T. Lawless, Asst. Federal Public Defender, St. Louis, Mo., for appellant.

Michael Fagan, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Defendant John Edward Foster appeals his conviction on three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Foster argues on appeal that his conviction should be reversed and that this case should be remanded for a new trial for the following reasons: (1) the district court[1] erred in preventing him from presenting two witnesses that would have aided him in establishing his entrapment defense; (2) the district court improperly denied his motion to reveal the identity and location of the government informant prior to trial; and (3) a transcript of a taped telephone conversation between defendant and the government informant should not have been given to the jury to use in their deliberations. We affirm.

During the time of the events in question, Foster was employed by the United States Postal Service. On June 26, July 3, and September 12, 1985, he made three separate sales of an eighth of an ounce of cocaine to an undercover postal inspector, L.A. Armstrong. Foster was first introduced to Armstrong through a government informant, Walter David Kyle. Kyle had told Foster that a friend of his brother's from Kansas City had a good deal of money and was interested in purchasing some drugs. This "friend" was in reality Armstrong. A meeting between Foster, Armstrong, and Kyle was then arranged to take place at a midtown St. Louis restaurant on June 26, 1985. At the meeting, Armstrong asked Foster if he would be interested in purchasing an eighth of an ounce of cocaine for him. According to Foster, nothing was resolved at the meeting, but Foster did admit to telling Armstrong to give him a call later, stating that possibly he could do something for Armstrong.

Later that same day, Foster was contacted at home by Kyle and was asked to meet Armstrong and Kyle at a motel room that evening. The telephone conversation was recorded in its entirety by a government agent. Foster subsequently came to the motel room and was given $400 by Armstrong to purchase $350 worth of cocaine. Foster left and some two hours later returned with the cocaine, which he gave to Armstrong. Foster received fifty dollars for making the purchase. Kyle was present in the motel room both when the $400 exchanged hands and when Foster returned with the cocaine. Afterwards, however, he had no further involvement in the later cocaine purchases by Armstrong from Foster on July 3 and September 12, 1985.

## I.

Prior to the presentation of the defense's case, the government made a motion *in limine* to prohibit the defense from introducing evidence from two witnesses, Michael Harris and Linda Jamison, concerning their knowledge of Kyle's drug usage. The district court ruled that the testimony should be excluded. Foster made an offer of proof that Linda Jamison would testify that she had met with Kyle on three occasions in May 1985, and that on each of these occasions Kyle offered to provide her with cocaine—offers that she refused. Michael Harris testified out of the presence of the jury that on an evening in late May 1985 he had observed Kyle freebasing cocaine in the presence of Foster and another individual at Harris' mother's home. Foster argues that it was improper for the district court to exclude this testimony since it was necessary to establish his entrapment defense.

The defense of entrapment consists of two elements: that government agents induced or caused the defendant to commit the crime charged, and that the defendant was not otherwise predisposed to commit the crime. *United States v. Woosley*, 761

---

**1.** The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

F.2d 445, 448 (8th Cir.1985); *United States v. Lard,* 734 F.2d 1290, 1293 (8th Cir.1984). The policy behind the defense is that law enforcement officers and their agents should be involved in detecting and preventing crime and not in manufacturing it. *See Lopez v. United States,* 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963).

Foster claims that the excluded testimony would have helped establish the inducement portion of the defense. His theory of inducement was that Kyle sought to establish a relationship with Foster based on Kyle's providing drugs for him.[2] Kyle's effort to gain favor with Foster, it is argued, went so far as having Kyle offer drugs to Foster's wife's cousin, Linda Jamison. Once this relationship had been established, Kyle then proposed to introduce Foster to Armstrong with the idea that Armstrong had the financial means to pay a premium price for the drugs that Foster might obtain. Kyle then allegedly suggested that this surcharge could be used to provide drugs for Foster and Kyle.

■ Although we doubt that it was proper for the district court to exclude the testimony of Jamison and Harris, we find that if any error occurred, it was harmless beyond a reasonable doubt. *United States v. Maull,* 806 F.2d 1340, 1345 (8th Cir. 1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1352, 94 L.Ed.2d 522 (1987). We are confident that the addition of the testimony of Jamison and Harris would not have had an effect on the outcome of the case. A review of the record reveals that Foster's allegations of inducement are somewhat weak given the evidence presented at trial; the testimony of these two witnesses would have done little to strengthen Foster's defense. More than anything else, Foster appears to have been motivated by a desire to obtain money so that he could purchase drugs for his own use. The proffered testimony of Jamison and Harris hardly contradicts this fact. In reality, it appears that all that the government agents did was provide an opportunity for Foster to commit the illegal transactions. This, in and of itself, is insufficient to establish entrapment. *United States v. Lard,* 734 F.2d 1290 (8th Cir.1984); *United States v. Quinn,* 543 F.2d 640 (8th Cir.1976). Accordingly, the exclusion of the testimony of the two witnesses was harmless error at worst.

## II.

■ Foster filed a pretrial motion for the disclosure of the identity of the government's confidential informant, Walter David Kyle. The district court adopted the magistrate's recommendation that the motion not be granted.

The need for protecting the identity of government informants is well recognized. *See Scher v. United States,* 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938); *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). Nevertheless, the need for anonymity must give way when the identity of the informant "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause * * *." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 627–28. The Court in *Roviaro* stated that this determination should be made on a case-by-case basis:

> We believe no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–29.

Under the facts of this case, the district court did not err in not requiring the disclosure of the informant's identity prior to trial. Foster makes much of the fact that Kyle was a key participant in the first drug

---

2. It is noteworthy that during Foster's offer of proof, Michael Harris did not acknowledge that Kyle was providing drugs to Foster.

transaction between Foster and Armstrong. It cannot be gainsaid that Kyle was a key witness in this case. The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required. *See United States v. Barnes*, 486 F.2d 776, 778–79 (8th Cir.1973). We find, however, that Foster was not harmed by the non-disclosure of Kyle's identity prior to trial. It is highly significant that Kyle ultimately testified at trial. *See id* at 779. He testified at length and was subjected to extensive cross-examination regarding his relationship with Foster, the circumstances of Foster's crimes, and the specifics of his role as a government informant. Foster had a full opportunity to question Kyle about entrapment-related conduct and any other relevant matters. At no time did Foster request a continuance, an opportunity to *voir dire* Kyle, or any other relief upon learning Kyle's full identity. In addition, there is nothing to indicate that Foster would have done anything different to affect the result at trial had an earlier disclosure been made. We thus find that the district court did not err in declining to permit an earlier disclosure of Kyle's identity.

### III.

The government was permitted to play a tape of a June 26, 1985, telephone conversation between Kyle and Foster. With the permission of the court, and without objection by Foster, the jurors were provided a transcript of the conversation to use while they listened to the tape. The court instructed the jurors that they were to be guided by what they heard and that the transcript was to be used only as an aid in listening to the tape. Later, during its deliberations, the jury asked the court for the transcript of the taped conversation. Foster objected, contending that the transcript had not been admitted into evidence. Overruling Foster's objection, the court provided the transcript to the jury.

We hold that the district court did not err in permitting the jury to use the transcript in its deliberations. Our review of the record leads us to conclude that the transcript was in fact admitted into evidence without objection just prior to the close of the government's case. A proper foundation was laid for the transcript, and Foster has not challenged the accuracy of the transcript.

Once exhibits are properly admitted into evidence, it is within the sound discretion of the trial court to allow them to be sent to the jury room. *United States v. Parker*, 491 F.2d 517 (8th Cir.1973). We find no abuse of discretion in this instance. The district court instructed the jury that what it heard on tape and not what was contained in the transcript was to be controlling if there were any discrepancies between the two. This instruction clearly and correctly informed the jury that the transcript itself was not to be given any "independent weight." *See United States v. McMillan*, 508 F.2d 101, 105–06 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Furthermore, the jurors had already read the transcript while the tape recording of the June 26 telephone conversation was being played during the trial; Foster raised no objection to the use of the transcript at that time. We conclude, therefore, that the district court did not abuse its discretion in allowing the jury to take the transcript into the jury room.

The judgment of conviction is affirmed.