UNITED STATES of America, Appellee,

v.

Samuel Joe PFEFFER, Appellant.

No. 89–5016.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.
Decided April 10, 1990.

Dennis C. Whetzal, Rapid City, S.D., for appellant.

Robert A. Mandel, Rapid City, S.D., for appellee.

Before JOHN R. GIBSON, and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge,

WOLLMAN, Circuit Judge.

Samuel Joe Pfeffer appeals his conviction for distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). We affirm.

## I.

Viewed in the light most favorable to the verdict, the evidence established that on October 29, 1987, Pfeffer, who was then employed as a truck driver for a South Dakota firm, stopped at a gas station in Pine Ridge, South Dakota, while enroute to Montana from Nebraska. Pfeffer began looking for water to fill his radiator. Dean Zephier, a paid government informant, hailed Pfeffer, claiming that he recognized Pfeffer from Pfeffer's home town of Lake Andes, South Dakota. Zephier brought up the topic of drugs, saying that he had some marijuana and "mushrooms" to sell. Zephier asked Pfeffer if he had any methamphetamine, commonly called "crank" or "speed." Pfeffer said that he did and that he had just bought $500.00 worth of crank. Zephier then asked Pfeffer to sell him some, to which Pfeffer replied that he would.

Zephier asked Pfeffer to wait at the gas station while he went to his house to get drugs and talk to his "old lady." Pfeffer asked Zephier whether he was going to "get the cops." Zephier assured him that he was not. Zephier then went to meet Federal Bureau of Investigations Agent Rick Esselbach, with whom he had been working. Zephier put on a body recorder, and he and Esselbach returned to the gas station five to ten minutes after Zephier had left. Pfeffer was pulling out of the gas station as they returned. Zephier and Esselbach followed Pfeffer's truck for a distance of several blocks until Pfeffer pulled over.

Zephier got out of the car and joined Pfeffer in the cab of Pfeffer's truck, where the two had a twenty to thirty minute conversation, recorded by Zephier's body recorder. Early on during this conversation, in response to Zephier's statement that he had been "[d]rugg'n heavy," Pfeffer asked, "You got any fucking narcs on the reservation around here?," and went on to say, "Fuckin' tired of narcs, can't fuckin' stand it." Zephier again offered to sell Pfeffer drugs, but Pfeffer refused. Zephier asked Pfeffer about buying some methamphetamine and told Pfeffer that he was not a "narc." Pfeffer said he did not want to be involved and that he did not "sell the bullshit like that." He asked, however, if Zephier knew where he could sell some bad quality crank. Pfeffer also said that he could get some "primo weed" if Zephier gave him the money up front. Throughout the conversation, Pfeffer offered Zephier some methamphetamine to try on the spot. Zephier initially refused, but then pretended to use the drug. Towards the end of the conversation, Pfeffer sold Zephier eight-tenths of a gram of methamphetamine.

Esselbach arrested Pfeffer in Lake Andes, South Dakota, on July 4, 1988. Esselbach asked Pfeffer if he had any weapons with him. Pfeffer said that he did and removed an automatic handgun from a suitcase in his van.

At trial, Pfeffer asserted the affirmative defense of entrapment. The jury rejected this defense, however, and convicted Pfeffer of distributing methamphetamine. The district court sentenced Pfeffer to thirty months' imprisonment, with a special parole term of three years.

Pfeffer challenges his conviction on two grounds. First, he contends that the district court[1] should have found entrapment as a matter of law. Second, Pfeffer challenges the district court's admission of evidence concerning the gun surrendered by Pfeffer at the time of his arrest.

---

1. The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

## II.

■ Entrapment is an affirmative defense which consists of two elements: government action to induce or otherwise cause the defendant to commit the crime, and the defendant's lack of predisposition to commit the crime. *United States v. Foster*, 815 F.2d 1200, 1201 (8th Cir.1987). The policy behind the defense is that law enforcement officers and their agents should be involved in detecting and preventing crime, not in manufacturing it. *Id.* at 1202; *see Lopez v. United States*, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963); *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). The entrapment defense does not, however, preclude undercover law enforcement operations that use stealth, strategy or deception to trap an unwary criminal, or which provide a defendant with an opportunity or facility to commit the crime. *Sherman*, 356 U.S. at 372, 78 S.Ct. at 820; *United States v. Lard*, 734 F.2d 1290, 1293 (8th Cir.1984). Entrapment occurs "only when the Government's deception actually implants the criminal design in the mind of the defendant...." *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973). "The key question is therefore whether the government agent caused or induced the defendant to commit a crime he was not otherwise predisposed—i.e. willing and ready—to commit whenever a propitious opportunity arose." *Lard*, 734 F.2d at 1293.

■ The question of entrapment is ordinarily for the jury. *United States v. Williams*, 873 F.2d 1102, 1104 (8th Cir. 1989). For Pfeffer to prevail in his contention that the trial court should have granted his motion for judgment of acquittal, he must show entrapment as a matter of law. *United States v. King*, 803 F.2d 387, 389 (8th Cir.1986); *United States v. Resnick*, 745 F.2d 1179, 1186 (8th Cir.1984). To establish entrapment as a matter of law, the evidence must clearly indicate (1) that a government agent originated the criminal design; (2) that the agent implanted in the mind of an innocent person the disposition to commit the offense; and (3) that the defendant committed the criminal act at the urging of the government agent. *Williams*, 873 F.2d at 1104; *United States v. Shaw*, 570 F.2d 770, 772 (8th Cir.1978). When reviewing a district court's denial of motion for acquittal, we must view the evidence in the light most favorable to the government. *Williams*, 873 F.2d at 1104.

■ It is true that there were inconsistencies between Zephier's direct and cross-examination testimony. Although on direct examination Zephier claimed that Pfeffer said he would sell crank to Zephier, Zephier appeared to admit on cross-examination that Pfeffer had not told Zephier his crank was for sale and that the only drugs offered for sale during the gas station conversation were the marijuana and mushrooms Zephier offered to Pfeffer. These inconsistencies were for the jury to resolve, however, and we cannot say that they compel a finding that Pfeffer manifested no predisposition to sell drugs. Likewise, the fact that Pfeffer decided to resume his journey without waiting for Zephier to return after talking to his "old lady" was for the jury to take into account in weighing the evidence concerning Pfeffer's predisposition. In making this determination, the jury had before it the evidence of Pfeffer's question regarding the presence of "narcs" and his professed hatred for narcs, hardly the comments of one who has had no involvement whatsoever with illegal drugs. The jury also had before it Pfeffer's admission during cross-examination that he had been using amphetamines for "a couple of years" and he was willing to give some crank to Zephier, although he denied any intention to sell the crank to Zephier.

The issue resolves itself to how far the government may go in utilizing undercover agents to obtain evidence of criminal activity. At some point the government's efforts can cross the line from a legitimate inquiry of those predisposed to commit a crime to an impermissible instigation of illegal conduct by those not otherwise disposed to break the law, at which point entrapment occurs as a matter of law. Here, the government's efforts brought it

perilously near that line. Nevertheless, Pfeffer had methamphetamine in his possession and, if Zephier's testimony is believed, indicated a willingness, if not an eagerness, to sell it. Accordingly, we hold that the government's conduct did not constitute entrapment as a matter of law.

We agree with Pfeffer that the trial court should not have admitted the testimony concerning the gun that was in the suitcase in Pfeffer's van at the time he was arrested. By no stretch of the imagination can it be said that the gun was even remotely connected with the drug offense that occurred nearly a year earlier. Likewise, there is no evidence that Pfeffer was involved in ongoing drug transactions and thus used the weapon as a tool of the trade. Nevertheless, the record reveals that little was made of the gun in the government's presentation of its case, and we therefore hold that the error in admitting it was harmless.

The judgment of conviction is affirmed.