**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 07-4862**

———————

UNITED STATES OF AMERICA,

> Plaintiff - Appellee,

> v.

FERMIN GITERREZ MARTINEZ,

> Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., Chief District Judge.  (3:05-cr-00338-RJC)

———————

Argued:  May 14, 2008                    Decided:  June 24, 2008

———————

Before WILKINSON and KING, Circuit Judges, and Jackson L. KISER, Senior United States District Judge for the Western District of Virginia, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** John J. Cacheris, DOZIER, MILLER, POLLARD & MURPHY, LLP, Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Fermin Giterrez Martinez appeals from his February 2006 conviction in the Western District of North Carolina for possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Martinez's primary contention on appeal is that the principles of Rovario v. United States, 353 U.S. 53 (1957), and Brady v. Maryland, 373 U.S. 83 (1963), were contravened when the prosecution failed to make timely and adequate disclosure to the defense of identity and impeachment information concerning its testifying confidential informant. As explained below, although such disclosure may have been tardy and inadequate, it was not so prejudicial as to warrant relief. We therefore affirm.

I.

Martinez left his native Mexico at the age of seventeen and illegally entered the United States. He thereafter married an American citizen and was a legal resident in this country for a short period of time. After divorcing his wife, however, Martinez's legal status was revoked, and he remained in this country illegally. The conviction that he challenges in this appeal was premised on his possession of a firearm in relation to a drug transaction with a confidential police informant named

2

Emanuel Barajas.  At the time of the offense, Barajas was also an illegal alien.

A.

On September 27, 2005, a grand jury in the Western District of North Carolina returned a three-count indictment against Martinez. It charged him with (1) knowingly and intentionally possessing methamphetamine with intent to distribute, in contravention of 21 U.S.C. § 841(a)(1) (Count One); (2) being an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5) (Count Two); and (3) possessing a firearm during and in relation to a drug trafficking crime, in contravention of 18 U.S.C. § 924(c)(1) (Count Three).  Martinez was arraigned in the district court on October 27, 2005, and his case was scheduled for a docket call on November 7, 2005.  After he filed a motion for a continuance on November 1, 2005, the docket call was rescheduled for February 6, 2006.  As further explained below, his trial (on Count Three only) began on February 7, 2006, and it concluded with a guilty verdict the next day.

On November 16, 2005, Martinez's court-appointed defense lawyer filed a comprehensive set of pretrial criminal discovery motions, requesting disclosure from the prosecution of, inter alia, all Rovario and Brady information and evidence, including the following:  (1) whether it intended to call any confidential police informants as witnesses at trial; (2) the relevant contact

3

information of such informants; (3) information concerning meetings between government agents and the informants; (4) information concerning any payments made to such informants; (5) any inculpatory information concerning the informants; and (6) all exculpatory evidence, including contact information, for prosecution witnesses. Martinez also requested that the prosecution make its confidential informants available to be interviewed by the defense.

More than two months later (and six days before trial), the United States Attorney wrote to Martinez's lawyer and first disclosed the name of its informant, Emanuel Barajas; advised that Barajas had been paid a "sum of money by CMPD [the Charlotte-Mecklenburg Police Department] for his cooperation which led to the arrest of [Martinez]"; and further advised that he was an alien not legally in the United States. J.A. 164-A.[1] Finally, the letter, dated February 1, 2006, related that "the Government does not know the exact amount of money that [the informant] was paid, but that information will be turned over to you before trial." Id.[2]

---

[1]Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

[2]The prosecution's February 1, 2006 disclosure letter to defense counsel advised as follows:

The Government hereby gives notice of the following information relating to the trial in the above case:

1. The informant is Emanuel Barajas[.]

4

On either February 2 or 6, 2006, the defense raised with the district court its contention concerning inadequate disclosure by the prosecution — particularly as to Barajas — and requested a trial continuance in order to locate and interview him. Although the record is somewhat ambiguous, the court apparently denied the continuance request and directed that the trial proceed as scheduled. On February 6, 2006, the day before the trial began, Martinez pleaded guilty to Counts One and Two. The trial then commenced the following day on Count Three only.[3]

### B.

### 1.

At trial, the Government called four witnesses — with Barajas, its informant, being the primary prosecution witness. According to Barajas, he first met Martinez through a co-worker known as "El Gordo," who told Barajas that he knew someone who

---

2.   The informant was paid a sum of money by CMPD for his cooperation which led to the arrest of your client [Martinez]. At this time the Government does not know the exact amount of money that he was paid, but that information will be turned over to you before trial.

3.   The informant is an alien and not legally in the United States.

J.A. 164-A.

[3]By his guilty pleas on Counts One and Two, Martinez admitted guilt on the first two counts, but denied, with respect to Count Three (which carried a consecutive prison term of five years), that the firearm possession had any relevance to the drug transaction.

wanted to start selling drugs. El Gordo arranged a meeting between Martinez and Barajas, and they discussed drugs that Martinez might deliver and sell. Martinez claimed that, for $20,000, he could get four kilograms of crystal methamphetamine, or "ice," and five kilograms of cocaine. Martinez explained that he had to travel to California to obtain the drugs, and that the cocaine would be from Columbia and the methamphetamine from Mexico. Martinez also advised Barajas that he was willing to sell a .45 handgun and a 9-millimeter handgun. After this meeting, Barajas spoke to Officer Jesus Rendon with the CMPD and informed him of the meeting, the possibility of an undercover drug deal, and Martinez's offer to sell handguns.

Less than a week later, Martinez met Barajas at a bar in Charlotte. During this meeting, Martinez agreed to travel to Los Angeles to obtain drugs for Barajas and phone Barajas upon his return. Barajas also reported this conversation to Officer Rendon. Martinez ultimately obtained approximately 3.75 pounds of crystal methamphetamine (but no cocaine), and, on August 1, 2005, called Barajas to advise that he (Martinez) was back from California and ready to complete the drug deal. The next day, Barajas, who was with Officer Rendon, called Martinez and agreed to meet at his apartment that morning. After Officer Rendon (who also testified for the prosecution) checked Barajas's vehicle to ensure that it contained no firearms or weapons, the officer followed Barajas to

Martinez's residence. Officer Rendon instructed Barajas to call as soon as he saw the drugs.

Upon arriving at Martinez's apartment, Barajas met Martinez and they proceeded into the apartment. They immediately went into a back bedroom, and Martinez locked the door behind them. Martinez then removed some Tupperware containers wrapped in plastic from a closet, cut the packaging with scissors, and opened the containers. Barajas observed several pieces of crystal methamphetamine and, pretending that he was calling an associate to obtain money to purchase the methamphetamine, called the Charlotte police officers. Barajas advised Martinez that he needed to pick up the money, and Martinez decided to accompany him.

According to Barajas, as Martinez was leaving the apartment, he removed a firearm from his waistband, "a black one, and he put it on the entertainment center." J.A. 223. When Barajas and Martinez exited the apartment, Martinez was immediately arrested and found to be unarmed. Following the arrest, officers searched the apartment and seized a loaded Glock .45 handgun from the top of the entertainment center near the front door. The officers also seized 3.68 pounds of crystal methamphetamine in Tupperware containers. The handgun was found twenty to twenty-five feet from where the methamphetamine was seized.

Barajas admitted on direct examination that he was an illegal alien from Mexico, and that he had worked as a paid informant for

7

the Charlotte police for approximately a year. Other than the drug transaction with Martinez, Barajas testified that he had been involved in three other drug deals for the CMPD. He further testified that he had been paid a total of approximately $5000 for his work as a police informant, $3000 of which was for the Martinez transaction. Prior to his work with the Charlotte police, Barajas knew nothing about drugs or drug dealing, and he testified that the CMPD had trained him as their informant. Barajas also testified that the officers promised to assist him in becoming a legal resident of the United States in return for his informant work.

The prosecution also called as witness police officers Rendon and Robson. Rendon, who supervised confidential informants in the Narcotics Unit of the CMPD, testified that Barajas was a good informant because he was "very honest," he "learned fast," and, to Rendon's knowledge, had never lied to the police. J.A. 251-52. Robson, one of the officers who executed the search warrant for Martinez's residence, testified that, upon entering the apartment immediately after the arrest, he observed a loaded Glock .45 handgun on an entertainment center near the front door. In the back bedroom twenty to twenty-five feet from the front door, Robson found a large quantity of methamphetamine in Tupperware containers.[4]

---

[4]The prosecution called Officer Rolondo Ortiz as a rebuttal witness. His testimony related only to the identity of El Gordo.

8

2.

The defense then called two witnesses, seeking to lay the groundwork for a contention that the Glock .45 handgun had not been possessed by Martinez in connection with a drug trafficking crime. Martinez testified in his own defense and asserted that he had not possessed a firearm during the drug transaction, that he had not displayed any weapon to Barajas, and that he had never spoken to Barajas about selling firearms. Although Martinez admitted owning a firearm (the Glock), he claimed that it was purchased only for protection of his family. He also acknowledged that he had pleaded guilty two days earlier to the offenses charged in Counts One and Two, thus admitting guilt to those drug and firearm offenses.[5]

C.

On February 8, 2006, at the close of the evidence, Martinez's defense lawyer referred the trial court to earlier proceedings in the case, at the court's pretrial docket call (which were apparently off the record). Counsel requested an opportunity to place into the record the court's denial, at the docket call, of his continuance request — a continuance that he sought in order to locate and interview Barajas. The defense asserted that it was

---

[5]The other defense witness was Marlin Garcia, a co-worker of Martinez's. Garcia testified that he was with Martinez when he purchased the Glock .45 handgun in the spring of 2005. The day Martinez bought it, he explained to Garcia that he was concerned that someone would break into his home, and was buying the firearm to protect himself.

9

error for the prosecution to make incomplete disclosure of Barajas's identity — as it had, on February 1, 2006, disclosed his name only, with no further identifying information. Defense counsel requested, in the alternative, that the court suppress Barajas's testimony. The court denied both requests, and the jury returned a guilty verdict later that day.

On August 2, 2007, the court sentenced Martinez to 121 months of imprisonment on Count One, a concurrent term of 120 months on Count Two, and a consecutive term of 60 months on Count Three. Judgment was entered on August 30, 2007, and Martinez has timely appealed. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a trial court's decision regarding the prosecution's disclosure of evidence, including witness information, for abuse of discretion. See United States v. Fletcher, 74 F.3d 49, 54 (4th Cir. 1996) (explaining that we have "interpreted Rule 16 of the Federal Rules of Criminal Procedure governing discovery and inspection as placing the decision regarding pre-trial disclosure of witness lists within the sound discretion of the trial court"). Of course, an error of law, such as the failure to mandate disclosure to the defense of evidence or information essential to the conduct of a fair trial, is by definition an abuse of discretion. See United States v. Singh, 518 F.3d 236, 251 (4th

10

Cir. 2008) ("By definition, a district court abuses its discretion when it makes an error of law."). When a new trial issue is premised on a Brady claim that presents questions of law as well as questions of fact, we review the court's conclusions of law de novo and any findings of fact for clear error. See United States v. Bell, No. 06-4648, 2008 WL 2315886, at *1 (3d Cir. June 6, 2008). If an appellant has timely objected, his appellate assertion of error is preserved, and we apply the harmless error standard provided by Rule 52(a) of the Federal Rules of Criminal Procedure. See Fed. Rule Crim. Pro. 52(a) (providing that "[a]ny error . . . that does not affect substantial rights must be disregarded").

## III.

### A.

By this appeal, Martinez seeks a new trial on Count Three of his indictment, contending that the district court erred in failing to require the prosecution to make timely disclosure of contact information and impeachment evidence concerning its testifying informant. In that regard, it has long been settled that "disclosure of [an] informant's identity is required where the informant is an actual participant [in the crime], particularly where he helps set up the criminal occurrence." McLawhorn v. State of North Carolina, 484 F.2d 1, 5 (4th Cir. 1973) (relying on Rovario v. United States, 353 U.S. 53, 64-65 (1957) (concluding

11

that when informant is sole participant in crime [other than accused], it is reversible error for prosecution to withhold identity of informant)). In McLawhorn, our Judge Boreman addressed a due process contention in 1973 concerning the prosecution's failure to identify a confidential informant who was a participant in the charged offenses. Importantly, his opinion clearly stated the principle that "[o]nly by disclosing all material information, especially informant's true name and address . . . does the prosecution discharge its duty under the due process clause." 484 F.2d at 8 n.19 (relying on, inter alia, Rovario, 353 U.S. 53 (1957); and Brady v. Maryland, 373 U.S. 83 (1963)) (emphasis added).[6] Here, the Government maintains that the Rovario, McLawhorn, and Brady precedents are distinguishable, and thus not controlling, because Barajas actually testified at trial. It maintains that, because Martinez's lawyer had an opportunity to fully cross-examine Barajas at trial, the mandate of those decisions — that an accused should have access to "all material

---

[6]In Rovario, the Supreme Court concluded that, when a confidential informant is the only participant in a crime, other than the accused, it is reversible error for the prosecution to withhold the identity of the informant from the defendant. 353 U.S. at 64-65. In Brady, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87 The Court has further held that the Brady duty extends to both impeachment and exculpatory evidence. See United States v. Bagley, 473 U.S. 667, 676 (1985).

12

information" concerning a police informant who participated in the charged offense — is inapplicable.

In this situation, the prosecution disclosed to the defense, just six days before trial, Barajas's name only (with no further identifying information). Martinez thus maintains that the prosecution failed to satisfy its obligations to disclose the informant's "identity," as well as impeaching and exculpatory evidence concerning the informant. More specifically, Martinez asserts that he had no way of knowing, solely on the basis of the scant and untimely information supplied by the prosecutors, where the informant was located or how he might be contacted.

In his discovery motions (filed more than two months before trial), Martinez had requested the informant's contact information, including his address and phone number. He had also requested disclosure of Brady materials, including information that might impeach the prosecution's witnesses. After the prosecution failed to disclose such information in response to the discovery motions, Martinez unsuccessfully sought a trial continuance at the court's docket call the day before the trial began, to allow an opportunity to interview Barajas. As a result, when Martinez cross-examined Barajas at trial, he had to do so without an earlier opportunity to investigate the role of the prosecution's key witness as a police informant.

13

As the prosecution argues, some courts have sought to distinguish the applicability of the <u>Rovario</u> and <u>Brady</u> precedents, and find that a lack of timely disclosure is not error if the informant was called to testify at trial. Other courts have reasoned that a harmless error analysis should be conducted, and that, when such an informant testifies at trial and is available for cross-examination, the prosecution is entitled to show that the defendant was not prejudiced by the untimely disclosure. <u>See</u> <u>United States v. Perkins</u>, 994 F.2d 1184, 1190-91 (6th Cir. 1993) (concluding that <u>Rovario</u> is distinguishable, and error is nonprejudicial, when confidential informant testifies at trial); <u>United States v. Foster</u>, 815 F.2d 1200, 1203 (8th Cir. 1987) (holding that court did not err in declining to permit disclosure of informant's identity when informant testified at trial); <u>United States v. Pennick</u>, 500 F.2d 184, 186-87 (10th Cir. 1974) (finding no prejudice from the failure to disclose the informant's identity, and explaining that "[t]he significant difference between <u>Rovario</u> and the instant case is that in the former the informer did not testify at trial, and in our case he did").

Whether a disclosure error occurred in this case is plainly a close question —— and the relevant record on the disclosure issue is, at best, somewhat ambiguous. However, the controlling precedents — including <u>Rovario</u>, <u>Brady</u>, and <u>McLawhorn</u> — are clear. The prosecution was thus on notice of — and aware of — its

14

disclosure obligations: When a confidential informant has participated in the charged offense, and the informant was the only participant other than the accused, his identity and "all material information, especially informant's true name and address," must be timely disclosed. See McLawhorn, 484 F.2d at 8 n.19. In these circumstances, however, rather than undertaking to resolve the issue of whether the prosecution erroneously withheld discovery that Martinez was entitled to receive, we will simply assume, for purposes of this appeal, that such an error occurred. As a result, we will assess the question of whether such error was harmless.

B.

Assuming that a disclosure error occurred, we must assess whether it affected Martinez's substantial rights and was prejudicial to his right to a fair trial. See Fed. Rule Crim. Pro. 52(a) (providing that "[a]ny error . . . that does not affect substantial rights must be disregarded"); see also McLawhorn, 484 F.2d at 7 (recognizing error and assessing whether failure to disclose informant's identity was prejudicial). Martinez contends, of course, that not having received timely disclosure with respect to the informant, he was unable to sufficiently prepare his defense and effectively cross-examine Barajas. To support this proposition, Martinez points to several facts that were not disclosed in a timely manner: (1) that Barajas had assisted the CMPD with three drug deals in addition to the drug transaction with

15

Martinez; (2) that Barajas had received approximately $5000 for assisting the Charlotte police, including $3000 for his transaction with Martinez; (3) that the police officers had advised Barajas that they would assist him in becoming a legal resident of this country in return for his help; and (4) that the CMPD had taught Barajas about the drug trade so that he could work as a paid informant.  As Martinez argues, most of this evidence should have been timely disclosed to the defense under the principles of Rovario, McLawhorn, and Brady.

Although the harmlessness issue also presents us with a close question, the record is insufficient to warrant an award of a new trial on Count Three.  Martinez has not shown how the prosecution's failure to timely disclose "all material information" either altered or impaired his cross-examination of Barajas, or how such failure otherwise adversely affected the outcome of his trial.  Moreover, when Martinez testified, he admitted that he had pleaded guilty to the Count One drug offense and the Count Two firearms offense, leaving the jury to resolve only a single factual issue — whether the two offenses were sufficiently related to constitute the crime of possession of a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924 (c)(1)  (as charged in Count Three).

In addition to Barajas's testimony, the prosecution presented the jury with witnesses who buttressed Barajas's credibility.

Officer Rendon testified that Barajas was an honest and reliable informant.  Officer Robson, who executed the search warrant for Martinez's apartment, testified that he observed a Glock .45 handgun on the entertainment center by the front door immediately after Martinez was arrested, corroborating Barajas's testimony on that point and providing independent evidence of the relationship between the firearm and the drugs.  Furthermore, a substantial amount of impeachment evidence was presented to the jury by the prosecutors during Barajas's direct examination, rendering it more difficult for Martinez to demonstrate that he was prejudiced by the disclosure error.  Thus, although the prosecution should have acted in a more timely and comprehensive manner with respect to its disclosure obligations, we are not, in these circumstances, convinced that its failure to do so was prejudicial to the substantial rights of Martinez.  As a result, we must deny relief and affirm Martinez's conviction on Count Three.[7]

---

[7]Martinez also asserts on appeal that he should be awarded a new trial because the prosecution fatally erred in making a prejudicial closing argument.  Martinez failed to object to the argument, however, and we review this contention for plain error only.  See United States v. Moore, 11 F.3d 475, 481 (4th Cir. 1993) (concluding that when defense counsel failed to object to prosecution's closing argument, objection was forfeited and could only be reviewed for plain error).  The prosecution concedes that it committed error in its closing argument, but argues that Martinez was not prejudiced by any such error.  After closely examining the record, we agree with the prosecution on this point, and we are satisfied that this contention is without merit.

17

IV.

Pursuant to the foregoing, the judgment of the district court is affirmed.

AFFIRMED